UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEPUY SYNTHES SALES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-01072-JMS-DLP |
| | ) | |
| ORTHOLA, INC., | ) | |
| BRUCE A. CAVARNO, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter involves the Federal Arbitration Act, ("FAA"), by which Congress has "mandated the enforcement of arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The existence of arbitration agreements in the contracts at issue in this case affect the Court's analysis at every turn, taking arguments concerning personal and subject-matter jurisdiction beyond the well-established jurisdictional principles at issue in cases where the FAA is not a factor, and altering the Court's analysis under the familiar factors derived from *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800 (1976) in a host of ways.

In March 2019, nearly five months after a related case had been filed in California state court, Plaintiff DePuy Synthes Sales, Inc. ("DePuy") filed two petitions in this Court to compel arbitration against Defendants OrthoLA, Inc. ("OrthoLA") and Bruce A. Cavarno (collectively, "Defendants") and to enjoin them from proceeding with their California state court action under the Anti-Injunction Act. [Filing No. 1; Filing No. 53.] On July 12, 2019, this Court consolidated the two related cases under this cause number after finding that the two cases involve common questions of law and fact. [Filing No. 52.] Prior to consolidation, Defendants had filed three sets of nearly identical Motions in the two cases, each of which is presently pending before the Court,

including: two Motions to Dismiss pursuant to the *Colorado River* Abstention Doctrine, and Sections 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, [Filing No. 29; Filing No. 54]; two Motions for Judicial Notice, [Filing No. 45; Filing No. 60]; and two Motions to Strike portions of a reply brief, [Filing No. 46; Filing No. 61].  All of the pending Motions are fully briefed and are ready for the Court's review.

The Court will first consider the Motions for Judicial Notice.  Next, the Court will take up the Motions to Dismiss.  Lastly, the Court will consider the Motions to Strike.

## I.
### MOTIONS FOR JUDICIAL NOTICE

In their unopposed Motions for Judicial Notice, Defendants request that the Court take judicial notice of two categories of documents:  (1) "the court docket reflecting the actions in Los Angeles Superior Court, Case No. 18STCV02833," [Filing No. 45 at 2; Filing No. 60 at 2], and (2) documents related to the two separate cases that were then pending before this Court, and have since been consolidated, [Filing No. 45 at 2-3 (originally filed under this cause number, arguing in favor of judicial notice for documents filed under 1:19-cv-1069-JMS-DLP); Filing No. 60 at 2-3 (originally filed under cause number 1:19-cv-1069-JMS-DLP, arguing in favor of judicial notice of documents filed under this cause number)].

As to the first category, Federal Rule of Evidence Rule 201(b) provides that a court may take judicial notice of a fact that is "not subject to reasonable dispute" because it:  "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  It is well settled that orders entered by a state court "are public records and appropriate subjects of judicial notice."  *In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (citing *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); Fed. R. Evid. 901(b)(7)).  Therefore, Defendants'

Motions, [Filing No. 45; Filing No. 60], are **GRANTED** as they relate to the court docket in Los Angeles Superior Court, Case No. 18STCV02833.

As to the second group of documents, Defendants seek judicial notice of documents that have – for the most part – already been transferred onto the docket for this cause number. To the extent such documents have already been transferred, Defendants' Motions are **DENIED** as **MOOT**. To the extent Defendants' request notice of documents in Filing No. 45 that have not been transferred to this docket, Defendants' Motions are **GRANTED**.

## II.
### MOTIONS TO DISMISS

In support of their Motions to Dismiss, Defendants raise both jurisdictional and substantive arguments. But "[d]eciding any part of the merits [of a case] . . . is possible only if there is jurisdiction." *Smith v. Greystone All., LLC*, 772 F.3d 448, 450 (7th Cir. 2014). Therefore, the Court must consider Defendants' jurisdictional arguments before turning to any others. Defendants bring their jurisdictional arguments pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2).

Under both subsets of Rule 12, courts look beyond the complaint's allegations and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction and personal jurisdiction exist. *See Ciarpaglini v. Norwood*, 817 F.3d 541, 543 (7th Cir. 2016) (discussing subject matter jurisdiction); *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (discussing personal jurisdiction). As such, the Court will first set forth the relevant background of the case consistent with the standards set forth below for Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2). Next the Court will consider Defendants' jurisdictional arguments, first those relating to subject matter jurisdiction, then those related to

personal jurisdiction.[1]  Lastly, the Court will consider Defendants' arguments concerning the *Colorado River* Abstention Doctrine.

### A.  Background

#### 1.  *Agreements between Mr. Cavarno, OthroLA, and DePuy*

DePuy manufactures, markets, and sells medical implants and instruments, including joint reconstruction products.  [Filing No. 1 at 2.]  DePuy's joint reconstruction product line is sold, marketed, and distributed through exclusive distributors who are assigned to specific sales territories in certain geographic areas.  [Filing No. 1 at 2.]

In 2008, DePuy entered into a Sales Representative Agreement ("Sales Agreement") with Defendants OrthoLA and Bruce Cavaro, which provided that Defendants would be DePuy's exclusive sales distributors for certain joint reconstruction products in and around Los Angeles, California.  [Filing No. 1 at 3.]  The Sales Agreement was renewed several times after the original 2008 Sales Agreement.  [Filing No. 1 at 4.]

Most recently, on November 30, 2015, DePuy, OrthoLA, and Mr. Cavarno signed a Sales Agreement appointing OrthoLA as DePuy's "exclusive sales representative" in a territory consisting of several counties in southern California for the "solicitation of orders for Products from hospitals, medical centers, trauma centers, outpatient facilities and orthopaedic (sic) surgeons."  [Filing No. 30-2 at 1; Filing No. 30-2 at 22.]

The Sales Agreement contains a clause (the "Arbitration Clause") that provides as follows:

---

[1] Prior to consolidation, Defendants file a Motion to Dismiss in each action.  Defendants' Motions to Dismiss and briefs in support thereof are nearly identical.  [*Compare* Filing No. 29 and Filing No. 30 *with* Filing No. 54 and Filing No. 55.]  To avoid undue confusion, where both briefs contain the same argument, the Court will only cite to the first motion or related brief.  The Court will cite to Filing No. 54 and its related briefs only when they contain arguments not found elsewhere.

14.1    Any controversy or claim arising out of or relating to this Agreement shall be resolved by arbitration before a single arbitrator in accordance with the Commercial Arbitration Rules of the American Arbitration Association *("AAA")* then pertaining (available at www.adr.org), except where those rules conflict with this provision, in which case this provision controls. Any court with jurisdiction shall enforce this clause and enter

judgment on any award. The arbitrator shall be selected within twenty business days from commencement of the arbitration from the AAA's National Roster of Arbitrators pursuant to agreement or through selection procedures administered by the AAA. Within 45 days of initiation of arbitration, the parties shall reach agreement upon and thereafter follow procedures, including limits on discovery, assuring that the arbitration will be concluded and the award rendered within no more than eight months from selection of the arbitrator or, failing agreement, procedures meeting such time limits will be designed by the AAA and adhered to by the parties. The arbitration shall be held in Indianapolis, Indiana and the arbitrator shall apply the substantive law of Indiana, except that the interpretation and enforcement of this arbitration provision shall be governed by the Federal Arbitration Act. Prior to appointment of the arbitrator or thereafter if he/she is unavailable, emergency relief is available from any court to avoid irreparable harm. THE ARBITRATOR SHALL NOT AWARD EITHER PARTY PUNITIVE, EXEMPLARY, MULTIPLIED OR CONSEQUENTIAL DAMAGES, OR ATTORNEYS FEES OR COSTS.

[Filing No. 30-2 at 18-19.]

       DePuy, OrthoLA and Mr. Cavarno also entered into a Continuing Incoming Agreement (the "Income Agreement") with an effective date of November 30, 2015, that provided the terms by which DePuy would pay OrthoLA income for ten years following the termination or expiration of the Sales Agreement. [Filing No. 30-3 at 1.] The Income Agreement provided that DePuy would have no obligation to pay any continuing income if it terminated the Sales Agreement pursuant to specific terms of the Sales Agreement. [Filing No. 30-3 at 3.] The Income Agreement contained an Arbitration Clause identical to the one contained in the Sales Agreement. [Filing No. 30-3 at 4-5.]

       The parties attempted to renegotiate the Sales Agreement in late 2017 but were unsuccessful and the Sales Agreement lapsed on January 7, 2018.[2] [Filing No. 1 at 5.] The next

---

[2] The record contains additional information about the unsuccessful negotiations among the parties. [*See, e.g.*, Filing No. 30-5 (alleging that in 2013, after DePuy discontinued a department

day, all of OrthoLA's sales representatives left OrthoLA and began working for DePuy's distributor, Golden State Orthopedics ("GSO"). [Filing No. 30-5 at 12.]

Notwithstanding the existence of the Income Agreement, DePuy did not make any continuing income payments to Mr. Cavarno or OrthoLA because DePuy concluded that they had engaged in competitive activities and/or solicitation activities and had voluntarily forfeited their rights to receive continuing income. [Filing No. 1 at 6.]

### 2. The California Suit

On October 25, 2018, OrthoLA and Mr. Cavarno filed suit in the Los Angeles Superior Court (the "California Suit") against GSO, Bradford Lapoint, Kevin Fryxell, DePuy, and Does 1-50. [Filing No. 30-5 at 1.] In their complaint in the California Suit, OrthoLA and Mr. Cavarno brought seven causes of action, including:

- a claim against GSO, Mr. LaPoint, and Mr. Fryxell (the "GSO Defendants") for intentional interference with contractual relations, [Filing No. 30-5 at 13];

- a claim against the GSO Defendants for intentional interference with prospective economic advantages, [Filing No. 30-5 at 14];

- a claim against the GSO Defendants for negligent interference with prospective economic advantages, [Filing No. 30-5 at 14-15];

---

that produced made-to-order instruments, distributors began making modifications to instruments; in or around 2017, DePuy initiated a voluntary recall of the modified instruments with the U.S. Food and Drug Administration, causing Mr. Cavarno and OrthoLA to request that DePuy agree to indemnify them in the event Mr. Cavarno and OrthoLA were exposed to liability as a result of the recall; DePuy refused, and OrthoLA participated in a letter to DePuy alleging that DePuy had extensive knowledge of the instrument modifications prior to the recall; by late 2017, DePuy presented Mr. Cavarno with a proposed Sales Agreement that was a significant departure from the prior Sales Agreements; as negotiations moved on, the parties eventually began negotiating the sale of OrthoLA to DePuy's distributor, Golden State Orthopedics, ("GSO"), however that deal also fell apart).] However, the intricacies of the parties' negotiations are not ultimately important to the Court's determination of the pending Motions.

- a claim against the GSO Defendants for unfair competition, [Filing No. 30-5 at 15];

- a claim against DePuy for breach of the Income Agreement, [Filing No. 30-5 at 16];

- a claim against DePuy for breach of implied covenant of good faith and fair dealing, [Filing No. 30-5 at 17]; and

- a claim against DePuy seeking declaratory relief that the Sales Agreement and the Income Agreement violate California law, [Filing No. 30-5 at 18].

On December 5, 2018, DePuy filed a motion in the California suit seeking an order compelling OrthoLA and Mr. Cavarno to arbitrate their claims against DePuy and staying the California Suit. [Filing No. 30-6 at 8.] On February 14, 2019, the Los Angeles County Superior Court denied DePuy's Motion, finding the following:

- that California law applies, [Filing No. 30-6 at 8-12];

- the Agreements' choice of law provisions and forum selection provisions are unconscionable because "applying Indiana law to the contractual dispute between the parties would be unduly oppressive or unconscionable and would result in substantial injustice" to OrthoLA and Mr. Cavarno, [Filing No. 30-6 at 25-26]; and

- although "there is no dispute that the parties entered two agreements that contain arbitration provisions," [Filing No. 30-6 at 13], procedural unconscionability is not completely absent, [Filing No. 30-6 at 21], and both agreements are "substantively unconscionable" due, in part, to the fact that DePuy, but not OrthoLA or Mr. Cavarno, could file a lawsuit to enforce potentially any of the provisions of the Income Agreement and two provisions of the Sales Agreement, [Filing No. 30-6 at 24-25].

On March 15, 2019, DePuy appealed the Los Angeles County Superior Court Order Denying Motion to Compel for Order Compelling Arbitration and Staying Action Pending Arbitration. [Filing No. 30-8.] That appeal remains pending.

      *3. DePuy Files a Demand for Arbitration in Indianapolis, Indiana and Files Two Suits Seeking to Compel Arbitration in the U.S. District Court for the Southern District of Indiana*

The same day it filed an appeal in the California suit, DePuy filed a demand for arbitration with the American Arbitration Association in Indianapolis, Indiana listing Mr. Cavarno and OrthoLA as respondents. [Filing No. 30-9 at 4.] In its demand for arbitration, DePuy: (1) sought "a declaration that the actions taken by both DePuy . . . and the GSO Parties, as [DePuy's] designee," in connection with the termination of the Sales Agreement and the "transition of business" from Mr. Cavarno and OrthoLA to the GSO Parties, including the GSO Parties' engagement with Mr. Cavarno and OrthoLA's sales representatives, "were consistent with the express provisions" of the Sales Agreement; and (2) brought "a breach of contract claim to recover the damages that it has sustained, and will continue to sustain," as a result of Mr. Cavarno and OrthoLA's "conduct in improperly asserting and maintaining their lawsuit in California." [Filing No. 30-9 at 6.]

On March 18, 2019, DePuy filed a Petition to Compel Arbitration against OrthoLA, Inc. and Bruce A. Cavarno and to enjoin them from proceeding with their California state court action under the Anti-Injunction Act. [Filing No. 1.] DePuy's petition referenced the Income Agreement. [Filing No. 1 at 1.] The same day, under cause number 1:19-cv-1069, DePuy filed a Petition to Compel Arbitration against the same Defendants and to enjoin them from proceeding with their California state court action under the Anti-Injunction Act pursuant to the Sales Agreement. [Filing No. 53.]

On July 12, 2019, this Court found that that consolidation was appropriate under Rule 42(a) and consolidated DePuy's two cases before this Court into the instant case, in which the two Motions to Dismiss are now pending.  [Filing No. 30; Filing No. 54.]

**B.  Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1)**

*1.  Standard of Review*

Federal Rule of Civil Procedure 12(b)(1) "allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is to test the sufficiency of the complaint, not to decide the merits of the case.  Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject-matter jurisdiction.  Jurisdiction is the "power to decide," *Boley v. Colvin*, 761 F.3d 803, 805 (7th Cir. 2014), and federal courts may only decide claims that fall within both a statutory grant of authority and the Constitution's limits on the judiciary.  *In re Chicago, R.I. & P.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).

While a court deciding a Rule 12(b)(1) motion may accept the truth of the allegations in the complaint, it should look beyond the complaint's jurisdictional allegations and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Ciarpaglini*, 817 F.3d at 543. The party asserting the existence of subject matter jurisdiction bears the burden of demonstrating by competent proof that such jurisdiction in fact exists.  *See Thomas v. Gaskill*, 315 U.S. 442, 446 (1942); *see also Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). A Rule 12(b)(1) motion may be raised at any time, by either party or by the Court *sua sponte*. See Fed. R. Civ. P. 12(h).

## 2. *Discussion*

Defendants argue that this Court lacks subject matter jurisdiction because the FAA "does not create an independent basis for federal question jurisdiction." [Filing No. 30 at 14.] Instead, Defendants argue that the FAA only grants subject matter jurisdiction to a "United States district court which, save for such agreement, ***would have jurisdiction under title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties***." [Filing No. 30 at 13 (citing 9 U.S.C. § 4 (emphasis added)).] Further, Defendants allege that diversity jurisdiction is lacking because DePuy is seeking relief for the GSO Defendants, who are not diverse and whom Defendants contend are indispensable parties under Federal Rule of Civil Procedure 19 because "DePuy is seeking damages for and on behalf of the GSO [Defendants] and is seeking a declaration that the GSO [Defendants'] actions were lawful." [Filing No. 30 at 14-16.]

In response, DePuy contends that the GSO Defendants "are neither necessary nor indispensable to" the Court's determination of "whether to grant the Petition and compel arbitration of Defendants' claims against DePuy Synthes pursuant to the [Income Agreement's] arbitration clause." [Filing No. 39 at 14.] Specifically, DePuy argues that the GSO Defendants are neither signatories to the Income Agreement or the Sales Agreement, nor subject to the arbitration clause at issue, and "have no interest" in the litigation of Defendants' claims against DePuy. [Filing No. 39 at 13; Filing No. 55 at 13.]

In their reply brief, Defendants argue that "DePuy misleadingly states that the 'only issue' before this Court is DePuy's claims, even though the arbitration which DePuy initiated explicitly seeks damages and declaratory relief on behalf of . . . the 'GSO [Defendants].'" [Filing No. 44 at 2.]

Helpful to any consideration of the FAA and jurisdiction is *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, in which the Supreme Court stated that

> [t]he Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.

460 U.S. 1, 26 n.32 (1983) (citations omitted). Therefore, the Court's starting point is to determine the basis of jurisdiction.

DePuy does not argue that the FAA creates an independent basis for federal question jurisdiction, and instead argues that diversity jurisdiction exists. On this point, both parties cite Rule 19 of the Federal Rules of Civil Procedure[3] and *Davis Companies v. Emerald Casino, Inc.*, in which the Seventh Circuit describes the two-step inquiry for considering joinder under Rule 19 as follows: "First, the court must determine whether a party is one that should be joined if feasible—called, in the old days, a 'necessary party' . . . [I]f the court concludes . . . that the party

---

[3] Federal Rule of Civil Procedure 19(a)(1) requires that

"[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.

should be included in the action but it cannot be, it must go on to decide whether the litigation can proceed at all in the party's absence." 268 F.3d 477, 481 (7th Cir. 2001) (citations omitted).

*Davis* also instructs that to answer the first question, the Court must consider "(1) whether complete relief can be accorded without joinder, (2) whether [the GSO Defendants'] ability to protect [their] interest will be impaired, and (3) whether the existing parties will be subjected to a substantial risk of multiple or inconsistent obligations unless [they are] joined." *Id.* at 481.

In support of their respective positions, both parties point to the opposing party's actions. For example, Mr. Cavarno and OrthoLA point out that DePuy "cannot seriously contend that the GSO Defendants are not indispensable" given that DePuy previously urged the Los Angeles County Superior Court to stay the claims against the GSO Defendants because the claims were "so inextricably connected." [Filing No. 30 at 16.] DePuy, on the other hand, argues that Mr. Cavarno and OrthoLA conceded that the GSO Defendants are not necessary and indispensable parties in their consolidated opposition to DePuy's Petition in this Court by urging the Court to limit its order to parties subject to the arbitration clauses. [Filing No. 39 at 15.]

The Court's finding on this point is based, not upon any concession made by the parties, but rather on an application of Rule 19 and upon case law interpreting the FAA, which supports a finding that the GSO Defendants are not necessary parties such that diversity jurisdiction is destroyed.

"Under 9 U.S.C § 4, a district court may compel arbitration if that court 'would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties.'" *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 842 (7th Cir. 1999). Several courts have examined the issue of just who "the parties" are under this provision, because that determination impacts diversity jurisdiction. The Seventh Circuit Court has tackled this question and determined

that "the parties" referenced in 9 U.S.C. § 4 of the FAA "include[s] the parties to the petition to compel arbitration and not the parties named in the parallel state court proceeding." *Id*. at 842; see also *Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 n.4 (7th Cir. 1981) (holding that a contract assignee is only a necessary party to a contractual arbitration if the assignee's improper acts were integrally related to the contract, such as torts committed outside of the assignee's authority). However, the Court must go a step further to determine whether the GSO Defendants should be added to this action as "parties" on the theory that they are indispensable parties. For this determination, the Court looks to the elements of Rule 19(a).

The first element of Rule 19(a) that the Court must consider is whether, in the absence of the GSO Defendants, the court can accord complete relief among existing parties. Based upon the Seventh Circuit's reasoning in *We Care*, in order to determine whether "complete relief" can be accorded to the parties in this matter, the Court looks to the parties named in this suit to compel arbitration, and not the parties named in the California Suit. Therefore, the Court must consider whether complete relief can be accorded to DePuy without the joinder of the GSO Defendants. Fed. Rule Civ. P. 19(a)(1); *see Perrian v. O'Grady*, 985 F.2d 192, 196 (7th Cir. 1992) ("[T]he term 'complete relief' refers only to 'relief between the persons already parties, and not as between a party and the absent person whose joinder is sought.'") (citation omitted). Here, such relief would be compelling arbitration pursuant to the arbitration clauses found in the Income Agreement and the Sales Agreement. Although DePuy requests that OrthoLA and Mr. Cavarno be enjoined from proceeding with the California action against both DePuy and the GSO Defendants, DePuy cannot request this relief on the GSO Defendants' behalf. *Corey v. Progressive Nw. Ins. Co.*, 2006 WL 346313, at *2 (N.D. Ind. Feb. 13, 2006) ("Under Rule 19(a), it is the absent party which must claim an interest relating to the subject matter of the lawsuit."). Here, DePuy has filed an action

asking for the Court to compel arbitration. Such relief can be accorded without adding the GSO Defendants to this action.

The second element the Court must consider under Rule 19(a) is whether the GSO Defendants claim "an interest relating to the subject of the action.," and if so, will the absence of the GSO Defendants "impair or impede [their] ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). As noted above, when analyzing the addition of a party under Rule 19(a) in the context of a lawsuit to compel arbitration, the Court looks to the petition to compel arbitration and not the parallel state court proceeding. *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 842 (7th Cir. 1999). Therefore, the Court must consider whether the GSO Defendants claim an interest relating to the petition to compel. It is undisputed that the GSO Defendants are not parties to the Income Agreement nor the Sales Agreement, and they are therefore not bound by the arbitration clauses contained in those agreements. Consequently, they do not claim an interest relating to the subject matter of this action. *See Estate of Eiteljor ex re. Eiteljorg v. Eiteljorg*, 813 F. Supp. 2d 1069, 1082 (S.D. Ind. 2011) ("[T]he Seventh Circuit recognizes that being bound by or interested in result of pending litigation does not make a party one that is 'required' to be joined under Rule 19(a)(1)."). The GSO Defendants' interests can and will be litigated in the California Suit. At issue before this Court is only a determination as to whether to compel arbitration between DePuy, OrthoLA, and Mr. Cavarno, and the GSO Defendants are not necessary to this determination. As such, Defendants' Motions to Dismiss based on Federal Rule of Civil Procedure 12(b)(1) are **DENIED**.

### C. Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2)

#### 1. Standard of Review

When a defendant moves to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of showing that personal jurisdiction over the defendant exists." *Claus v. Mize*, 317 F.3d 725, 727 (7th Cir. 2003). When, as here, the Court "rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing . . . the plaintiff 'need only make out a prima facie case of personal jurisdiction.'" *Purdue Research*, 338 F.3d at 782 (quoting *Hyatt Int'l. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Accordingly, "[o]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id*. at 782-83. Factual disputes, however, are resolved in the plaintiff's favor. *Id.*

"A federal district court's personal jurisdiction over a defendant is established in a diversity-jurisdiction case ... only so long as the defendant is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Indiana Trial Rule 4.4(A) serves as Indiana's long-arm provision and expands personal jurisdiction to the full extent permitted by the Due Process Clause. *See LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965-66 (Ind. 2006). "Thus, the statutory question merges with the constitutional one—if [Indiana] constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so." *Northern Grain*, 743 F.3d at 492.

"The federal constitutional limits of a court's personal jurisdiction in a diversity case are found in the Fourteenth Amendment's due-process clause." *Id.* "[F]ederal constitutional law

draws a sharp and vital distinction between two types of personal jurisdiction: specific or case-linked jurisdiction, and general or all-purpose jurisdiction." *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012). "If the defendant's contacts are so extensive that it is subject to general personal jurisdiction, then it can be sued in the forum state for any cause of action arising in any place. More limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

### 2. *Discussion*

Defendants argue that neither general nor specific personal jurisdiction applies to them. [Filing No. 30 at 18.] First, Defendants contend that "[g]eneral jurisdiction does not exist here" because "[o]ther than their dealings with DePuy, neither Defendant has any meaningful contacts with the state of Indiana." [Filing No. 30 at 18.] Second, Defendants argue that specific jurisdiction is lacking because "there was no reason for Defendants to contemplate being hauled into an Indiana court" and the existence of the choice of law provision and the arbitration clause are insufficient to establish minimum contacts. [Filing No. 30 at 19.]

In response, DePuy concedes that general jurisdiction does not exist over Defendants. [Filing No. 39 at 22.] However, DePuy contends that "courts within the Seventh Circuit, including this very District, have held that, in an action to compel arbitration, a party's agreement to arbitrate in a particular jurisdiction constitutes consent to personal jurisdiction for the purpose of enforcing an arbitration agreement." [Filing No. 39 at 22.] In addition, DePuy argues that the cases upon which Defendants rely are inapplicable to this case because they were not actions seeking to compel arbitration. [Filing No. 39 at 25.]

In their reply brief, Defendants contend that "the arbitration clauses explicitly provide that only a court 'with jurisdiction' can enforce the arbitration clause" and that "Defendants cannot be said to have impliedly consented to the jurisdiction of this Court where the arbitration clauses explicitly provide that only a court 'with jurisdiction' can enforce the arbitration clauses." [Filing No. 44 at 10.]

Defendants rely upon two cases in support of their argument that the arbitration clause is insufficient to establish personal jurisdiction, each of which is easily distinguishable from this case. First, Defendants point to *United Fin. Mortg. Corp. v. Bayshores Funding Corp.*, in which a group of removing defendants argued that personal jurisdiction was lacking in a mortgage banker's suit against a group of defendants for mortgage fraud. 245 F. Supp. 2d 884 (N.D. Ill. 2002). The United States District Court for the Northern District of Illinois found that although an agreement provided for arbitration of disputes in Oak Brook, Illinois, the mortgage banker had elected not to compel arbitration and instead to litigate the case, alleging a host of claims including fraud, conspiracy, and negligence. *Id.* at 888. The court found that the relevant clause "only pertains to the arbitration of disputes. . . ; it does not address a forum for litigation." *Id.* at 892. The court rejected the argument that defendants "had consented to jurisdiction to litigate in a particular forum based solely on the parties' agreement to arbitrate in that forum" and found that the mortgage banker could not rely upon the arbitration clause to bring suit in Illinois. *Id.* at 892.

Similarly, *Eclipse Aerospace, Inc. v. Star 7, LLC* involved a suit for "breach of contract and tortious interference with prospective economic advantage under Illinois state law." 2016 WL 901297, at *1 (N.D. Ill. Mar. 3, 2016). Although a contract existed between the parties in which they agreed that any arbitration would take place in Illinois, "[f]or reasons that they have not revealed, the parties . . . agreed to waive the arbitration provision." *Id.* at *2 n.2. Here again, the

United States District Court for the Northern District of Illinois rejected the argument that "a defendant who agrees to arbitrate in a particular forum also consents to litigate in that forum." *Id. at *8*. The ruling makes complete sense given the parties' waiver of their arbitration agreement.

As DePuy correctly points out, the matter before the Court is distinguishable from both *United Financial* and *Eclipse* in that it is not an action seeking, for example, to litigate claims for breach of contract with mutual waiver of an arbitration provision. Rather, DePuy brought this action seeking to compel arbitration in the forum set forth in the Agreements. Defendants do not address this issue in their reply brief and indeed, Defendants "concede that many federal courts have held that where a party agrees to arbitrate in a particular jurisdiction, courts of that jurisdiction may exercise personal jurisdiction for the limited purpose of compelling arbitration." [Filing No. 44 at 14.] Instead, Defendants point to the language of the Arbitration Clauses in the Agreements, which they contend "explicitly states that a court 'with jurisdiction' shall enforce the arbitration clause[s]." [Filing No. 44 at 14.] The Court is not persuaded by Defendants' circular argument on this point. Instead, the Court finds that the because the parties agreed to arbitrate any claims or controversies in Indianapolis, Indiana, [Filing No. 30-2 at 18-19], this Court has personal jurisdiction over the action to compel said arbitration. *Accord Sterling Const. Corp. v. SOS Const. & Roofing, Inc.*, 2015 WL 2189588, at *2 (N.D. Ind. May 11, 2015) (finding that where a "forum selection clause addresses the forum for arbitration and [plaintiff] has moved to compel arbitration in that forum," arbitration "in accordance with the forum selection clause" was proper, notwithstanding a challenge to personal jurisdiction); *see also St. Paul Fire & Marine Ins. Co. v. Courtney Enters.*, 270 F.3d 621, 624 (8th Cir. 2001) ("if the court in the selected forum [of an arbitration agreement] did not have personal jurisdiction to compel arbitration, the agreement to arbitrate would be effectively unenforceable").

Accordingly, Defendants' Motions to Dismiss based on Federal Rule of Civil Procedure 12(b)(2) are **DENIED**.

### D. *Colorado River* Abstention

#### 1. *Standard of Review*

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 517 (7th Cir. 2001) (quoting *Colorado River*, 424 U.S. at 817). The *Colorado River* doctrine, however, "creates a narrow exception to that rule, allowing federal courts in some exceptional cases to defer to a concurrent state-court case as a matter of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817); *see also Baek v. Clausen*, 886 F.3d 652, 663 (7th Cir. 2018) ("The *Colorado River* doctrine allows courts to conserve judicial resources by abstaining from accepting jurisdiction when there is a parallel proceeding elsewhere") (citation and quotation omitted).

To determine whether a stay or dismissal under *Colorado River* is appropriate, "a district court must first evaluate whether the federal and state cases are parallel." *Huon*, 657 F.3d at 646 (citing *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498 (7th Cir. 2011)). Two suits are parallel when there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Adkins*, 644 F.3d at 499 (citation omitted). If there is any doubt that cases are parallel, a district court should not abstain. *Huon*, 657 F.3d at 646.

If, however, "it is established that the suits are parallel, the court must consider a number of non-exclusive factors that might demonstrate the existence of 'exceptional circumstances.'" *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004). These factors are

(1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Id*. at 685.

### 2. *Discussion*

In support of their Motions, Defendants argue that "the Court should conclude that the California Action is completely parallel to this action" because "[w]hether or not the dispute between DePuy and Defendants is arbitrable was already litigated before the trial court [in] California and will be addressed by the California Court of Appeal." [Filing No. 30 at 9.] Further, Defendants argue that under the second step in a *Colorado River* analysis, "seven out of the ten *Colorado River* factors weigh in favor of abstention." [Filing No. 30 at 9.] Specifically, Defendants contend that the inconvenience to them is "dramatic" as they are located in California, [Filing No. 30 at 10], the risk of piecemeal litigation is high as DePuy is forcing them to litigate in five different forums, [Filing No. 30 at 10], the California Suit was filed prior to DePuy's Complaints in this Court, [Filing No. 30 at 10-11], California law applies to the dispute, [Filing No. 30 at 11], several motions have already been filed and heard in the California Suit and discovery has already commenced, whereas "nothing has happened before this Court other than the instant petition," [Filing No. 30 at 11], "[s]tate courts are required to apply the FAA where it is applicable," [Filing No. 30 at 12], and DePuy brought this action "because it 'did not like the way the wind was blowing'" in the California Suit, [Filing No. 30 at 12].

In response, DePuy contends that a "balancing of the ten *Colorado River* factors mandates the exercise of federal jurisdiction in this matter." [Filing No. 39 at 27.] DePuy first argues that

neutral factors "militate against abstention." [Filing No. 39 at 28 (citation omitted).] DePuy further argues that the Arbitration Clauses constitute a waiver of Defendants' argument that Indiana is an inconvenient forum. [Filing No. 39 at 29.] Third, DePuy argues that "there is no risk of piecemeal litigation here" and that any "piecemeal litigation is a direct result of Defendants' efforts to avoid the arbitration clause and sue non-parties to the contract." [Filing No. 39 at 30.] In addition, DePuy argues that "in the arbitration context, the order in which jurisdiction was obtained is virtually meaningless because a party seeking to compel arbitration of claims brought by the opposing party in state court simply does not know of the opposing party's refusal to arbitrate until the opposing party files its state court action." [Filing No. 39 at 31.] Further, DePuy contends that "the governing law the Court must apply in enforcing the [Income Agreement's] arbitration clause is the FAA, a federal statute," and that under the Income Agreement's "choice-of-law clause, Indiana is the substantive law that governs the contract, which further favors the exercise of jurisdiction by an Indiana federal court." [Filing No. 39 at 31-32.] In addition, DePuy argues that "the California state court's refusal to compel arbitration favors exercising jurisdiction." [Filing No. 39 at 32.] DePuy contends that the progress of the California Suit also weighs in favor of an exercise of jurisdiction because the state court's ruling on arbitration is not a final order. [Filing No. 39 at 33-34.] Further, DePuy argues that the FAA "provides the governing law and expresses a preference for federal litigation" in this matter. [Filing No. 39 at 34.] Regarding the ninth factor, DePuy argues that the presence of the GSO Defendants makes removal of the California Suit impossible. [Filing No. 39 at 34.] Lastly, DePuy argues that bringing this petition "is neither vexatious nor contrived." [Filing No. 39 at 34-35.]

In their reply brief, Defendants argue that "Federal courts, including this Court, have been unflinching in abstaining from exercising jurisdiction where the complainant files a federal action

because it is dissatisfied with the state court action." [Filing No. 44 at 3.] Defendants argue that they have not waived arguments about inconvenience to the parties by entering into the Agreements and, in any case, "the California Superior Court has already held that the arbitration clauses are unconscionable and unenforceable." [Filing No. 44 at 6.] Defendants reiterate their argument that there is the risk of piecemeal litigation, arguing that "exactly the same issue" that is "currently being litigated in California" is at issue in the arbitration that DePuy seeks. [Filing No. 44 at 6.] Defendants further argue that "[f]or DePuy to suggest that the Federal Actions and the California Action are on equal tracks is not genuine" and that the California Suit continues to be litigated despite this action. [Filing No. 44 at 8.] And lastly, Defendants reiterate that DePuy waited until after it lost its motion to compel in the California Suit. [Filing No. 44 at 9.]

i.    Stay versus Dismissal under *Colorado River*

Prior to engaging in the two-step *Colorado River* analysis, the Court acknowledges something that the parties do not – as the Seventh Circuit recently explained in *Adkins*, "[w]hen abstention is appropriate under *Colorado River*, our circuit has a strong preference for a stay rather than a dismissal of the federal suit." 644 F.3d at 503 n.9. The court went onto explain that

> As we explained in *Lumen Construction, Inc. v. Brant Construction Co.*, 780 F.2d 691, 698 (7th Cir.1986): "A dismissal, even without prejudice, creates a risk that the federal plaintiff will be time-barred from reinstating his federal suit if the state proceeding does not result in a final decision on the merits." A stay permits the court to retain jurisdiction and "has the additional advantage of bringing the case back before the same federal judge if a determination is needed as to the preclusive effects of the state judgment or decisions." *Id.*

*Adkins*, 644 F.3d at 503 n.9.

Despite prolific briefing, the parties do not engage in any meaningful discussion as to whether this Court should consider *Colorado River* abstention to stay or dismiss this case. Defendants styled each of their Motions as a "Motion to Dismiss For Lack of Jurisdiction," [Filing

No. 29; Filing No. 54], but argue throughout their brief in support thereof that "[t]his Court should . . . dismiss or stay the Federal Petitions under the *Colorado River* Abstention Doctrine," [Filing No. 30 at 9]. DePuy, on the other hand, merely argues that abstention would be improper, but draws no distinction between dismissal and stay for *Colorado River* purposes. [Filing No. 39 at 25.]

Given the Seventh Circuit's strong preference for stay rather than dismissal, the Court conducts its *Colorado River* analysis in order to consider whether to stay this action, not to dismiss it.

       ii.    <u>Whether this Case and the California Suit are Parallel</u>

Turning to the first step in the *Colorado River* analysis, the Court finds that the California Suit and this case are parallel. *See Huon*, 657 F.3d at 646 (The critical question is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case) (citations and quotation omitted). DePuy argues that there is no state proceeding addressing the Sales Agreement, [Filing No. 39 at 27], but "the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues," *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006), and therefore the Court finds that the two are parallel for the purposes of a *Colorado River* analysis.

The Seventh Circuit has also explained that "[o]ne important factor [in determining whether the cases are parallel] is whether both cases would be resolved by examining largely the same evidence." *Baek*, 886 F.3d at 666 (citation and quotation omitted). The similarity of evidence in resolving disputes involving the Sales Agreement and the Income Agreement is dramatically illustrated in this case by the two nearly identical petitions DePuy filed in the two cases that were consolidated into this one. [*Compare* Filing No. 1 *with* Filing No. 53; *see also*

[Filing No. 52 at 4](#) (in which the Court noted that "[e]ven a cursory glance at the nearly-identical Petitions, Motions to Dismiss, and Responses thereto reveals the extent to which the two matters involve common questions of law and fact")].

Moving then to the second step, the *Colorado River* factors provide the Court with discretion and flexibility; "there is no mechanical formula by which to determine when a stay is appropriate." *Clark*, 376 F.3d at 687 (quoting *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1157 (7th Cir. 1990)).

### iii. Neutral Factor – 1 Jurisdiction over property.

The Seventh Circuit has stated that "because of the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction." *Huon*, 657 F.3d at 648. However, this Court agrees with the Southern District of Indiana's prior decision in *Pence v. Lightning Rod Mut. Ins. Co.*, 203 F. Supp. 2d 1025, 1030 (S.D. Ind. 2002), which noted that neutral factors "militate against abstention, albeit insubstantially."

There is one neutral factor which insubstantially weighs in favor of exercising jurisdiction, as it is undisputed that the first factor is not at issue because this case does not involve jurisdiction over property.

### iv. Factor Weighing in Favor of Exercising Jurisdiction– 9. Availability of removal.

"The ninth factor intends to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1023 (7th Cir. 2014). The Court agrees with DePuy that the California Suit could not be removed to Federal court due to a lack of diversity. However, the Seventh Circuit has also recognized that where, as here, the state court case contains diverse and non-diverse parties "diverse parties are less likely to be prejudiced by the bias of an out-of-state court when their

interests are closely aligned with non-diverse parties." *Day v. Union Mines Inc.*, 862 F.2d 652, 660 (7th Cir. 1988). In other words, under the logic set forth in *Day*, because Defendants' claims against DePuy and the GSO Defendants in the California Suit are closely related, the likelihood of DePuy being prejudiced by any bias the California Court may have against it should be mitigated by the presence of the GSO Defendants. Accordingly, although the ninth factor weighs against dismissal, the Court does not give great weight to this factor.

    v.    <u>Factors Favoring Abstention – 2, 3, 4, 5, 6, 7, 8, and 10</u>

    -    <u>2. Inconvenience of federal forum.</u>

The second *Colorado River* factor – the inconvenience of the federal forum – is a close call, but the Court gives a slight edge to Defendants' argument that the factor weighs in favor of a stay. The parties argue about whether inconvenience is overcome by the presence of a forum selection clause where the validity of the clause itself is in dispute. Neither party points to any mandatory authority on this point and the Court's independent research has revealed none. In *AAR*, the Seventh Circuit rejected a party's argument that a forum selection clause barred an abstention claim altogether, noting that "an abstention motion is not the same as an objection to venue on grounds of inconvenience, and inconvenience to the parties is only one of the many factors that a district court weighs in deciding whether to abstain" but found that the district court should have weighed the clause in its convenience analysis. 250 F.3d at 523. Here, the Court cannot ignore the existence of the arbitration clause, but nor can the Court ignore the parties' underlying arguments about the clause's validity. Accordingly, the Court assigns little weight to this factor. Ultimately, the Court finds persuasive Defendants' argument, unacknowledged by DePuy, that the relevant witnesses, including the GSO Defendants and sales representatives, are

located in California.  As such the Court finds that this factor favors abstention, albeit insignificantly.

-   3. Desirability of avoiding piecemeal litigation.

In addition, the risk of piecemeal litigation in this matter is great.  The Seventh Circuit has stated that "the danger of piecemeal litigation does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority."  *Tyrer*, 456 F.3d at 756.  Specifically, "[t]he legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications."  *Id*. at 756 (quoting *Lumen*, 780 F.2d at 694).  DePuy points to *Blimpie Int'l, Inc. v. Butterworth* in support of its argument that piecemeal litigation is inevitable in this matter.  2005 WL 756218, at *7 (S.D. Ind. Mar. 9, 2005) (stating that "both the Supreme Court and Seventh Circuit have recognized that piecemeal litigation may be the inevitable result of a federal policy favoring arbitration, and is not the result of a choice between a federal and state forum").  But *Blimpie* relies upon cases where the potential piecemeal litigation involved parties who were not party to the arbitration agreement. *Id*. at *7 (*citing Moses H. Cone*, 460 U.S. at 20; *We Care Hair*, 180 F.3d at 842).  If the California Suit were only against the GSO Defendants, then DePuy's reliance on such cases would be appropriate.  But the California Suit is also against DePuy.  Therefore, this is not a situation like that presented in *Moses H. Cone*, where a party "will be forced to resolve . . . related disputes in different forums," 460 U.S. at 20,[4] rather, allowing this litigation to proceed would require the

---

[4] Specifically, *Moses H. Cone* involved a hospital that had "two substantive disputes . . .  one with Mercury, concerning Mercury's claim for delay and impact costs, and the other with the Architect, concerning the Hospital's claim for indemnity for any liability it may have to Mercury."  460 U.S. at 19.  The Court held that "[u]nder the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to

parties to resolve the same dispute in different forums, leading not just to piecemeal litigation but – potentially – to conflicting rulings. Moving past DePuy's misplaced reliance on *Moses H. Cone* and its progeny, the Court looks instead to the Seventh Circuit's focus on this factor's goal of conserving judicial resources and avoiding the potential for the two proceedings to reach inconsistent results. *See Freed*, 756 F.3d at 1022. Both of these factors weigh heavily in favor of abstention. This Court is among the busiest in the country, see U.S. Courts, Federal Court Management Statistics, National Judicial Caseload Profile (Mar. 31, 2019), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2019.pdf, and is therefore keenly aware of the pressing need to conserve judicial resources. In addition, as noted above, there is the potential for wholly inconsistent results if this Court does not abstain. As such, the Court finds that the third factor weighs heavily in favor of abstention.

- 4. Order in which jurisdiction was obtained by the concurrent forums.

In addition, the court finds that the fourth *Colorado River* factor – the order in which jurisdiction was obtained by the concurrent forums – also favors abstention. Despite the undisputed fact that the California Suit was filed in October 2018 and this case was filed in March 2019, DePuy argues that this factor favors the exercise of jurisdiction. This proposition is wholly unsupported by Seventh Circuit case law. *See Freed*, 756 F.3d at 1022 (providing that where a state suit was filed in February 2012 and a federal suit was filed in August 2012, the fourth factor

---

the arbitration agreement," and found that if "the dispute between Mercury and the Hospital is arbitrable under the Act, then the Hospital's two disputes will be resolved separately—one in arbitration, and the other (if at all) in state-court litigation. Conversely, if the dispute between Mercury and the Hospital is not arbitrable, then both disputes will be resolved in state court." *Id.* at 20. The situation in *Moses H. Cone* is, therefore, distinguishable from the situation here, where the issue of arbitration has already been decided in the California Suit (pending appeal) and DePuy asks this Court to resolve the same issue.

could "[a]t best. . . be considered neutral, but more likely favors abstention").  DePuy attempts to argue that the FAA is designed to move cases into arbitration "as quickly and easily as possible." [Filing No. 39 at 30.]  This, however, does not alter the dates on which the respective courts in this matter acquired jurisdiction.  DePuy's argument that this factor is meaningless in cases involving arbitration is also unpersuasive given the extensive time DePuy waited to file this case.  It is plausible that DePuy did not know of Defendants' opposition to arbitration when the California Suit was filed, but it is not plausible that DePuy did not know until March 2019.  By that time, the California Suit had progressed well beyond its infancy.  Therefore, the Court finds that the fourth factor weighs in favor of abstention.

- 5. Source of governing law, state or federal.

The governing law factor also weighs in favor of abstention.  DePuy cites out-of-circuit authority for the proposition that the under the FAA, federal law governs this Court's decision in this matter.  [Filing No. 39 at 31.]  DePuy's argument, however, ignores the fact that the validity of the Arbitration Clauses themselves are at issue and, indeed, have been invalidated in the California Suit.  Contrary to DePuy's argument, state law regarding contract formation governs this issue.  *See PCH Lab Servs., LLC v. Newman Mem'l Hosp. Inc.*, 2018 WL 1378181, at *5 (N.D. Ill. Mar. 16, 2018) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) for the proposition "that when deciding whether parties agreed to arbitrate a claim, courts generally should apply state law regarding contract formation"); *see also Moses H. Cone*, 460 U.S. at 25 ("To be sure, the source-of-law factor has less significance here . . . since the federal courts' jurisdiction to enforce the Arbitration Act is concurrent with that of the state courts").  It is true that the parties dispute whether Indiana or California law governs the determination of whether the Arbitration Clauses are valid.  But this distinction does not ultimately affect the Court's finding under this

factor.  If California law applies, this factor clearly weighs in favor of abstention.  *Freed*, 756 F.3d at 1022 ("a state court's expertise in applying its own law favors a *Colorado River* stay").  But even if Indiana law governs, the fact remains that state law will govern this suit and, as such, this factor weighs in favor of abstention.  *See Bci Acrylic Bath Sys., Inc. v. Chameleon Power, Inc.*, 2016 WL 2987006, at *4 (N.D. Ill. May 24, 2016) ("The court need not resolve the choice-of-law issue because this factor weighs against abstention regardless of which side is right, as state law rather than federal law will govern this suit").

-   6. Adequacy of state court action to protect federal plaintiff's rights.

The sixth factor, the adequacy of state court action to protect the federal plaintiff's rights, also weighs in favor of abstention.  DePuy has offered no evidence other than the California court ruling in favor of Defendants to suggest that the California court is prejudiced against it.  This, however, is not enough to show bias.  *AXA Corp. Sols. v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 280 (7th Cir. 2003) (disavowing an insinuation that a state court will not live up to the standards of a federal court). DePuy cites a 1977 Seventh Circuit case for the proposition that a state court's decision not to compel arbitration means that this Court has a duty to do so under the sixth *Colorado River* factor.  [Filing No. 39 at 32 (citing *Bio-Analytical Servs., Inc. v. Edgewater Hosp., Inc.*, 565 F.2d 450, 454 (7th Cir. 1977)).]  But *Bio-Analytical* discusses instances in which the FAA is applicable and if the Arbitration Clauses are invalid, as the decision in the California Suit found, then the FAA would not be applicable.  In short, the Court rejects DePuy's argument that, in effect, the California court is biased against it because it ruled against it.  Therefore, the sixth factor weighs in favor of abstention.

- 7. Relative progress of state and federal proceedings.

The Court need not belabor seventh or eighth *Colorado River* factors. The seventh factor weighs easily in favor of abstention, as the California Suit is significantly further along than this case. This was true when DePuy filed this case, and it remains true today.

- 8. Presence or absence of concurrent jurisdiction.

Further, the eighth *Colorado River* factor also favors abstention as the FAA "provides concurrent jurisdiction to states to enforce arbitration agreements." *Zurich Am. Ins. Co. v. Superior Court for State of California*, 326 F.3d 816, 826 (7th Cir. 2003).

- 10. Vexatious or contrived nature of the federal claim.

The tenth *Colorado River* factor – the vexatious or contrived nature of the federal claim – weighs most heavily in favor of abstention. DePuy vehemently denies that by filing this case, it seeks a second opportunity to pursue the validity of the arbitration clause. But the timeline of events in this matter cannot be denied. On October 25, 2018, OrthoLA and Mr. Cavarno filed the California Suit, on December 5, 2018, DePuy filed a motion to compel arbitration in the California Suit, on March 15, 2019, DePuy appealed the California court's denial of its Motion, and on March 18, 2019, DePuy filed this suit. This timeline supports a conclusion that this suit was an effort by DePuy to circumvent the California court's denial of its motion to compel arbitration and to get a second bite at the apple. *See Baek*, 886 F.3d at 667 (finding that "the vexatious nature of the federal claim supports abstention" where a party attempted to file a untimely claim in state court and one month later filed an identical action in federal court, and stating that "[c]learly, this was an effort to try to circumvent the [state court's] long-past deadline and get a second bite at the apple"). DePuy attempts to distinguish this case from others on factual grounds and notes that "[f]ar from seeking a second bite at the apple," it "simply seeks to vindicate its federally-protected

right to arbitration." [Filing No. 39 at 35.] This argument may have had merit if DePuy had not chosen to seek to compel arbitration in the California Suit. By doing so, and filing this case only when that effort had been frustrated, DePuy negated its argument that "it is imperative for this Court to act" without delay, as well as its argument that this suit is not vexatious or contrived. The Court finds that the tenth *Colorado River* factor strongly favors abstention.

In sum, having determined that numerous factors favor abstention under *Colorado River*, the Court **DENIES** Defendants' Motions to the extent that they seek dismissal, but **GRANTS** Defendants' Motions to the extent that they seek abstention under *Colorado River*. This case is therefore, **STAYED** pending final resolution of the California Suit.

### III.
### MOTIONS TO STRIKE

In its Motions to Strike, Defendants argue that "DePuy's Reply argues, for the first time, that the parties' agreements incorporate the American Arbitration Association Rules (the "AAA Rules") and that Rule 7(a) of the AAA Rules empowers the arbitrator to rule on his or her own jurisdiction," and that since Defendants never had the opportunity to address this issue, . . . DePuy's argument should be stricken." [Filing No. 46 at 2; Filing No. 61 at 2.]

Given the Court's stay of this case, Defendants' Motions to Strike are **DENIED** as **MOOT**.

### IV.
### CONCLUSION

Writing for a unanimous Court in *Ruhrgas AG v. Marathon Oil Company*, Justice Ginsburg wrote that, "[m]ost essentially, federal and state courts are complementary systems for administering justice in our Nation. Cooperation and comity, not competition and conflict, are essential to the federal design." 526 U.S. 574, 586 (1999). In this case, competition and conflict

will not carry the day, as this case presents exceptional circumstances under which the *Colorado River* factors favor abstention.

For the reasons set forth herein, Defendants' Motions to Dismiss [29] [54] are **GRANTED IN PART** and **DENIED IN PART** as follows:

- to the extent that the Motions to Dismiss are based on Federal Rule of Civil Procedure 12(b)(1), they are **DENIED**;

- to the extent that the Motions to Dismiss are based on Federal Rule of Civil Procedure 12(b)(2), they are **DENIED**;

- to the extent that the Motions to Dismiss argue for dismissal based on *Colorado River* abstention, they are **DENIED**;

- to the extent that the Motions to Dismiss argue for a stay based on *Colorado River* abstention, they are **GRANTED**, and this case is therefore, **STAYED** pending final resolution of the California Suit, Case No. 18STCV02833 before the Superior Court of the State of California in the County of Los Angeles.

Defendants' Motions for Judicial Notice [45] [60] are **GRANTED IN PART** and **DENIED IN PART** as **MOOT**.

Defendants' Motions to Strike [46] [61] are **DENIED** as **MOOT**.

Date: 9/11/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**