UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DePuy Synthes Sales, Inc., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-01072-JMS-DLP |
| | ) | |
| OrthoLA, Inc., and | ) | |
| Bruce A. Cavarno, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

In this case, Plaintiff DePuy Synthes Sales, Inc. ("DePuy") sought to compel Defendants OrthoLA, Inc. and its founder, Bruce A. Cavarno, to arbitrate claims concerning the alleged breach of a prior distributorship arrangement between the parties. DePuy also sought to enjoin Defendants from litigating a related case in California state court ("the California Action"), in which Defendants[1] sued DePuy and others related to the breakdown of the distributorship arrangement. After considering Defendants' Motions to Dismiss, [Filing No. 29; Filing No. 54], the Court stayed this action pending the resolution of the California Action, [Filing No. 77]. On appeal, the Seventh Circuit upheld this Court's stay order. [Filing No. 84]; *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 472 (7th Cir. 2020). Defendants have now filed a Motion to Lift Stay, [Filing No. 93], which is ripe for the Court's decision.

---

[1] Although OrthoLA, Inc. and Mr. Cavarno are plaintiffs in the California Action, they are Defendants in this case and will be referred to collectively as "Defendants" throughout this Order.

1

# I.
## BACKGROUND AND PROCEDURAL HISTORY

DePuy and Defendants were involved in a commercial relationship for nearly ten years.[2] [Filing No. 1 at 3.]  During that relationship, the parties entered into a Sales Representative Agreement ("SRA"), whereby DePuy appointed Defendants as its exclusive sales distributor for certain medical devices in the Los Angeles, California area.  [Filing No. 1 at 3.]  The parties also entered into a Continuing Income Agreement ("CIA"), which provided that Defendants would receive certain annual continuing income over the course of a ten-year period in the event the SRA expired or was terminated.  [Filing No. 1 at 4.]  Both contracts contained arbitration provisions. [Filing No. 1-1 at 5-6; Filing No. 28-2 at 18-29.]  In January 2018, the SRA expired, and the parties were unable to negotiate a new agreement.  [Filing No. 1 at 5.]  Thereafter, DePuy entered into a distributorship arrangement with Golden State Orthopedics ("GSO"), covering what used to be Defendants' sales territory.  [Filing No. 1 at 5-6.]

On October 25, 2018, Defendants initiated the California Action against DePuy and against GSO and individuals associated with GSO (collectively, the "GSO Parties").  [Filing No. 30-5.] Specifically, Defendants asserted claims against DePuy for breach of the CIA and breach of the implied covenant of good faith and fair dealing and sought a declaratory judgment against DePuy that the SRA and the CIA violate California law.  [Filing No. 30-5 at 16-21.]  Defendants also asserted claims against the GSO Parties for intentional interference with contractual relations, intentional interference with prospective economic advantages, negligent interference with prospective economic advantages, and unfair competition under California law.  [Filing No. 30-5 at 13-16.]

---

[2] The facts recited in this section are drawn from the parties' filings and are intended to provide background information only.  They do not constitute findings of fact by the Court.

On December 5, 2018, DePuy filed a motion in the California Action seeking to compel Defendants to arbitrate their claims against DePuy and seeking to stay the California Action pending the arbitration. [*See* Filing No. 30-6 at 1.] The trial court denied the motion on February 14, 2019. [Filing No. 30-6 at 1-28.] On March 15, 2019, DePuy appealed the denial to the California Court of Appeals. [Filing No. 30-8 at 1.]

On March 18, 2019, DePuy filed in this Court two nearly identical petitions—one concerning the CIA ("the CIA Petition") and one concerning the SRA ("the SRA Petition")—seeking to compel Defendants to arbitration and to enjoin the California Action. [Filing No. 1; Filing No. 53.] On July 12, 2019, this Court consolidated the two cases under this cause number after finding that the two cases involve common questions of law and fact. [Filing No. 52.] Prior to consolidation, Defendants had filed parallel motions in each of the two cases, including motions to dismiss the cases for lack of jurisdiction and pursuant to the abstention doctrine established in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). [Filing No. 29; Filing No. 54.]

On September 11, 2019, after considering the motions to dismiss, the Court determined that this case should be stayed—rather than dismissed—pursuant to the *Colorado River* doctrine pending resolution of the California Action. [Filing No. 77.] In relevant part, the Court found that this case and the California Action are parallel because there is a substantial likelihood that the California Action will resolve the claims presented in this case. [Filing No. 77 at 23-24.] DePuy appealed this Court's Order, [Filing No. 78], but the Seventh Circuit Court of Appeals affirmed, [Filing No. 84]; *DePuy Synthes Sales, Inc. v. OrthoLA, Inc*., 953 F.3d 469, 472 (7th Cir. 2020).

On October 26, 2020, while this Court's stay was in effect, the California Court of Appeals issued its decision reversing the California trial court's denial of DePuy's motion to compel

arbitration. *OrthoLA, Inc. v. DePuy Synthes Sales, Inc.*, 2020 WL 6269356, at *1 (Cal. Ct. App. Oct. 26, 2020). In doing so, the California Court of Appeals concluded that the arbitration provisions in the SRA and CIA are enforceable and require DePuy and Defendants to adjudicate their dispute in arbitration. *Id.* at *5.

On January 8, 2021, while this Court's stay was in effect, Defendants filed their Counter-Petition for Injunctive and Declaratory Relief in this Court. [Filing No. 85.] In the Counter-Petition, Defendants represent that following the decision by the California Court of Appeals requiring Defendants and DePuy to arbitrate their claims, all claims against DePuy were dismissed from the California Action and DePuy has initiated an arbitration proceeding against Defendants before the American Arbitration Association in Indianapolis. [Filing No. 85 at 2.] According to Defendants, DePuy's arbitration demand improperly seeks to arbitrate claims seeking relief on behalf of the GSO Parties who, were not signatories to the CIA or the SRA and are not subject to arbitration. [Filing No. 85 at 2.] Accordingly, Defendants ask the Court for a declaratory judgment establishing the scope of arbitration and for an injunction preventing DePuy from proceeding with its arbitration demand. [Filing No. 85 at 2.] Also on January 8, 2021, Defendants filed a Motion for Preliminary Injunction, seeking to enjoin DePuy from arbitrating any claims on behalf of the GSO Parties. [Filing No. 86.][3]

On January 15, 2021, Defendants filed a Motion to Lift Stay. [Filing No. 93.] DePuy filed its Response, [Filing No. 100], and Defendants did not file a reply within the seven-day period established in Local Rule 7-1(c). On February 24, 2021, Defendants filed a Motion to Consider Untimely Reply, [Filing No. 102], along with a proposed reply brief, [Filing No. 102-2]. DePuy

---

[3] Upon DePuy's request, the Court ordered that DePuy need not respond to the Counter-Petition or the Motion for Preliminary Injunction until after the Court rules on the Motion to Lift the Stay. [Filing No. 98; Filing No. 103.]

did not respond to the Motion to Consider Untimely Reply. Counsel is cautioned to take great care in the future to comply with all rules and deadlines out of respect for this Court's limited time and resources.[4] Nevertheless, because the Court finds that the failure to file a timely reply was the result of excusable neglect and DePuy will suffer no prejudice if the Court accepts the untimely reply, Defendants' Motion to Consider Untimely Reply is **GRANTED**. *See* Fed. R. Civ. P. 6(b)(1)(B) (providing that, for good cause, a court may extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect"); *Saul v. Prince Mfg. Corp.*, 2013 WL 228716, at *2 (N.D. Ind. Jan. 22, 2013) ("Errors in calendaring deadlines can . . . constitute good cause or excusable neglect for missing deadlines."). The Court will consider the proposed reply brief, [Filing No. 102-2], in resolving the Motion to Lift Stay.

## II.
### MOTIONS FILED IN VIOLATION OF THE STAY

Federal Rule of Civil Procedure 12(f) provides that, upon a party's motion or on its own, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although the Rule on its face only applies to pleadings, courts also have inherent authority to strike other kinds of impermissible filings. *See Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994) ("[I]t is within the district court's discretion to strike an unauthorized filing."); *White v. Dep't of Just.*, 2019 WL 653151, at *2 (S.D. Ill. Feb. 15, 2019) ("[T]he Court has inherent authority to strike impermissible filings other than pleadings."); *Keaton v. Hannum*, 2013 WL 1800577, at *1 (S.D. Ind. Apr. 29, 2013) (citing cases). While district courts

---

[4] This Court is the third busiest district in the country, as measured by weighted filings per judgeship. United States Courts, Federal Court Management Statistics: United States District Courts – National Judicial Caseload Profile (September 30, 2020), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf. https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf

have "considerable discretion" in striking impermissible materials, they must do so only when it is "reasonable and not arbitrary." *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (citations omitted). *See also Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("This Court has also held that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

When Defendants filed their Counter-Petition for Declaratory and Injunctive Relief, [Filing No. 85], and Motion for Preliminary Injunction, [Filing No. 86], the Court had ordered this case stayed, [Filing No. 77], and had not lifted the stay or otherwise granted Defendants leave to file any motions or pleadings. Accordingly, the Court finds that the Counter-Petition and the Motion for Preliminary Injunction were improperly filed. The Court therefore **STRIKES** those motions as violative of the stay. The only issue properly before the Court at this time is whether the stay should be lifted.

### III.
### MOTION TO LIFT STAY

In support of their Motion to Lift Stay, Defendants acknowledge that the California Court of Appeals "definitively ruled" that Defendants must arbitrate their claims against DePuy, and argue that "[o]ther than issues regarding . . . the enforceability of the arbitration provisions, there are no other parallel issues between the California Action and [this case]." [Filing No. 94 at 7.] Defendants acknowledge that "[t]here is nothing left for this Court to do but lift the stay as to the CIA Petition and enter a dismissal." [Filing No. 94 at 7.] However, they assert, "there remains an issue pertinent to the SRA Petition which needs to be decided by this Court;" specifically, whether DePuy is permitted to arbitrate claims on behalf of the GSO Parties. [Filing No. 94 at 7-8.] Defendants contend that "the parties need this Court to immediately lift the stay in order to decide this issue," because DePuy is moving forward with arbitration, the arbitrator has set a hearing date

6

for July 19, 2021, and in order to determine the scope of discovery and the length of the arbitration, "the parties need to know as soon as practically possible whether or not the [arbitration] will encompass the claims that DePuy is purporting to bring on the GSO Parties' behalf." [Filing No. 94 at 8.] Defendants assert that this Court is the proper decisionmaker for this issue, because the California courts have not been and will never be presented with this issue and it would be inappropriate to allow the arbitrator to decide the scope of arbitration. [Filing No. 94 at 8-9.] Defendants also argue that DePuy's refusal to lift the stay constitutes forum shopping and is an attempt to manipulate the Court system to either delay a ruling on Defendants' Motion for Preliminary Injunction until after the completion of arbitration or force Defendants to file an original petition that could be assigned to a new judge instead of permitting the resolution of a controversy currently pending before this Court. [Filing No. 94 at 9-10.]

DePuy responds that "Defendants do not, and cannot, offer any legal basis for this Court to lift its stay." [Filing No. 100 at 4.] Specifically, DePuy argues that in order to lift a stay imposed under the *Colorado River* doctrine, the parties must show that the circumstances have changed substantially, and Defendants cannot meet this standard because "the circumstances have not changed at all." [Filing No. 100 at 8-9.] DePuy maintains that the California courts have definitively resolved the issue of arbitrability, "[t]he only remaining step is for the parties to complete the arbitration," and "there is no reason for the Court to interfere with the ongoing arbitration." [Filing No. 100 at 9.] DePuy asserts that the stay should remain in effect because "the ongoing arbitration is merely an extension of this Court's stay and deference to the California proceeding." [Filing No. 100 at 5.] According to DePuy, Defendants' assertion that the arbitration cannot address any claims involving the GSO Parties is "a clear reversal of [Defendants'] prior position that the [arbitration demand] was 'completely parallel' to their claims in the California

[A]ction." [Filing No. 100 at 9-10 (citing Filing No. 30 at 9).]   In addition, DePuy argues, Defendants' concern that DePuy's claims will exceed the scope of the arbitration is entirely speculative, and if the arbitration ultimately results in an award that implicates issues outside of the scope of the arbitration agreements, Defendants can seek to vacate the award in this Court. [Filing No. 100 at 10-11.]   DePuy also contends that the Court should decline to lift the stay because "Defendants' arguments confirm that their attempt to lift the stay is nothing more than an effort to achieve what this Court has already found to be improper under *Colorado River*—a second bite at the apple on the question of arbitrability." [Filing No. 100 at 11.]   According to DePuy, Defendants have maintained throughout this action that the claims presented in the arbitration demand are parallel to those at issue in the California Action, and Defendants cannot now "reverse course, walk back their prior position, and argue that this Court should lift its stay and address arbitrability simply because the California courts have now ruled against them on that issue." [Filing No. 100 at 11-12.]   DePuy argues that although Defendants accuse it of forum shopping, Defendants paradoxically dismissed DePuy from the California Action in an attempt to convince this Court to "inject itself into the arbitration ordered by the California Court of Appeal[s]." [Filing No. 100 at 12-13.]   Finally, DePuy asserts that "Defendants' strategy is transparent: they want this Court to lift the stay so that they may litigate a speculative and unripe issue as to the scope of relief that they fear the arbitrator might award," but nothing in the Federal Arbitration Act authorizes such anticipatory review, therefore the Court should decline to lift the stay prior to the conclusion of the arbitration. [Filing No. 100 at 13.]

In reply, Defendants argue that DePuy's contention that circumstances have not changed since the stay was imposed "makes no sense" because the decision by the California Court of Appeals constitutes a changed circumstance. [Filing No. 102-2 at 2.]   And although the California

courts resolved some issues relevant to this litigation, Defendants assert, the California courts were not asked to address whether DePuy can arbitrate claims on behalf of the GSO Parties, and therefore this Court must resolve that issue now. [Filing No. 102-2 at 3-4.] Defendants argue that DePuy's assertion that Defendants could have presented this issue to the California courts is "disingenuous at best," because it is unclear how or when Defendants could have raised the issue before the California courts. [Filing No. 102-2 at 4.] Defendants also contend that they have not contradicted their previous position because they asserted in their motions to dismiss that this action and the California Action are parallel, and now they "are simply asserting that there is an additional non-parallel issue, specifically whether or not DePuy can assert claims on behalf of the GSO Parties." [Filing No. 102-2 at 4.] Finally, Defendants argue that "it makes intuitive sense" that this Court should rule on the preliminary injunction issue, rather than the California court, because this issue was never raised in the California Action. [Filing No. 102-2 at 5.]

"The court has discretion to lift its stay and may do so when circumstances have changed since imposition of the stay or if the court's expectations regarding resolution of the claims through the parallel state court proceeding have proven to be incorrect." *Ocwen Loan Servicing, LLC v. Nationwide Mut. Fire Ins. Co.*, 2011 WL 13350886, at *2 (S.D. Ind. Mar. 7, 2011) (citing *Tyrer v. City of South Beloit*, 516 F.3d 659 (7th Cir. 2008); *1st Am. Metals, Inc. v. Gough*, 34 F. App'x 494 (7th Cir. 2002)).

The Court's Order imposing the stay specified that this case was to remain stayed "pending final resolution of the California [Action], Case No. 18STCV02833 before the Superior Court of the State of California in the County of Los Angeles." [Filing No. 77 at 32.] Although the California Action has not been fully resolved and remains pending as Defendants litigate their remaining claims against the GSO Parties, the parties to this case agree that the issue of arbitrability

of the claims between Defendants and DePuy has been fully resolved. [*See* Filing No. 94 at 7 (Defendants acknowledging that "[t]he California Court of Appeal has definitively ruled that Defendants must arbitrate their California claims against DePuy"); Filing No. 100 at 5 (DePuy acknowledging that "the California courts have decided the question of arbitrability, [and] there is nothing left for this Court to decide").] Furthermore, given that DePuy has been dismissed – voluntarily by Defendants – from the California Action, there is no likelihood that the California courts will revisit the arbitrability issue or make any further determinations that will be dispositive of the arbitrability issue presented in this case. The purpose of the stay was to allow the parties and the Court to await a decision from the California courts, and now that such decision has been made and the parties acknowledge its finality and preclusive effect, there is no reason for the stay to remain in force.

Defendants emphasize that the California Court of Appeals reversed the decision of the California trial court, arguing that such reversal amounts to a significant change in circumstances. [*See* Filing No. 102-2 at 2.] The Court must clarify that it is not the substance of the California Court of Appeals' decision that is significant, merely the fact that a final decision was reached. Had the California Court of Appeals come to the opposite conclusion, this Court's decision to lift the stay would be the same. Similarly, it is not the purported existence of a "non-parallel issue" that justifies lifting the stay, it is that the parallel issue of arbitrability has been litigated to final determination. Put simply, the stay has served its purpose. This Court is now free to lift the stay and move forward with resolving this litigation, bearing in mind the preclusive effect of the California Court of Appeals' decision.

DePuy points to no authority supporting its position that the stay should only be lifted after arbitration is completed because the arbitration is effectively an extension of the California Action.

10

Indeed, that position is not consistent with the stay order or the nature of this litigation. It would be illogical for this Court to wait until arbitration has concluded to lift the stay only to then address the petitions to compel arbitration.

Furthermore, it is of no import that DePuy believes that Defendants have changed their position in this lawsuit or that Defendants are seeking "a second bite at the apple" as to the question of arbitrability. The Court acknowledges the inconsistency between Defendants' previous desire to dismiss this suit entirely and their current desire to continue litigating it. But DePuy has also changed its position throughout this lawsuit, first vehemently opposing the stay (to the point that it appealed this Court's stay order to the Seventh Circuit), and now seeking to leave the stay in effect (despite the lack of any basis for doing so). The Court will forego a lecture on the proverbial "pot" and "kettle," as it suffices to observe that this entire litigation—involving two federal petitions, numerous motions, and over a hundred docket entries spanning more than a year—is entirely the product of DePuy's effort to secure its own second bite at the same apple after losing its motion to compel arbitration in the California trial court. The fact that the California Court of Appeals ultimately defied DePuy's expectations, reversed the trial court, and sided with DePuy gives DePuy no high ground from which to make accusations. Counsel for both parties are reminded that an appropriate balance must be struck between zealously advocating for a client's interests on the one hand and illegitimate gamesmanship, manipulation of the legal system, and unnecessary expenditure of scarce judicial resources on the other.

In light of the foregoing, and the acknowledged preclusive effect of the California Court of Appeals' decision that DePuy and Defendants must arbitrate Defendants' claims, the Court **GRANTS** Defendants' Motion to Lift Stay and **LIFTS** the stay for the limited purpose of determining whether DePuy's consolidated Petitions to Compel Arbitration, [Filing No. 1; Filing

No. 53], should be dismissed as moot.  To that end, DePuy is **ORDERED TO SHOW CAUSE** by **April 1, 2021** why its consolidated Petitions to Compel Arbitration should not be dismissed as moot.  Defendants shall have **14 days** from the date of DePuy's response to this Order in which to file their response to DePuy's response.  DePuy shall have **7 days** from the date of Defendants' response to file a reply, if necessary.

## IV.
### CONCLUSION

For the reasons set forth above, the Court:

- **STRIKES** Defendants' Counter-Petition for Declaratory and Injunctive Relief, [85], and Motion for Preliminary Injunction, [86], as violative of the stay;

- **GRANTS** Defendants' Motion to Lift Stay, [94], and **LIFTS** the stay for the limited purpose of determining whether DePuy's consolidated Petitions to Compel Arbitration should be dismissed as moot; and

- **ORDERS** DePuy to **SHOW CAUSE** by **April 1, 2021** why its consolidated Petitions to Compel Arbitration should not be dismissed as moot.  Defendants shall have **14 days** from the date of DePuy's response to this Order in which to file their response to DePuy's response.  DePuy shall have **7 days** from the date of Defendants' response to file a reply, if necessary.

No further filings are anticipated or may be filed without leave of Court.

Date: 3/18/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**